**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CHARLES L. INGRAM, JR.,

      Plaintiff,

      v.

VELOCITY EXPRESS, INC.;
VELOCITY EXPRESS LEASING
SOUTHEAST, INC; and VELOCITY
EXPRESS SOUTHEAST, INC.,

      Defendants.

CIVIL ACTION

NO. 1:04-CV-2443-CAP

**O R D E R**

This matter is currently before the court on the plaintiff's motion for leave to serve more than twenty-five written interrogatories on the defendants [Doc. No. 10]; the defendants' motion for summary judgment [Doc. No. 12]; the defendants' motion for sanctions [Doc. No. 13]; the plaintiff's motion for an extension of time to file a response to the defendants' motion for summary judgment [Doc. No. 15]; the defendants' motion to strike the plaintiff's brief in opposition to the defendants' motion for summary judgment [Doc. No. 19]; and the defendants' motion to strike the plaintiff's reply brief [Doc. No. 24].  The court will first address the plaintiff's request for more interrogatories [Doc. No. 10], then the motions related to the motion for summary judgment [Doc. Nos. 15, 19, and 24],

then the motion for summary judgment [Doc. No. 12], and, finally, the defendants' motion for sanctions [Doc. No. 13].

## I.  Motion for Leave to Serve More Than Twenty-Five Written Interrogatories on the Defendants [Doc. No. 10]

Federal Rule of Civil Procedure 33(a) limits the number of interrogatories a party may serve upon another party to 25 absent leave of the court.  The plaintiff, however, served 31 interrogatories, and he did not file his motion seeking permission to serve an excessive number of interrogatories until March 28, 2005, three days after the close of discovery in this case.  Finally, the plaintiff has failed to explain why his discovery requests were filed so late in the discovery period, why he filed his motion after serving the excess discovery requests and after the close of discovery, and why he needs the additional discovery requests.  Given these circumstances, the court DENIES the plaintiff's motion for leave to take additional discovery [Doc. No. 10].

## II.  Motions Related to the Summary Judgment Motion [Doc. Nos. 15, 19, and 24].

The defendants filed their motion for summary judgment on April 14, 2005 [Doc. No. 12].  On May 9, 2005, which was within the plaintiff's time for response, the plaintiff filed a motion

2

for an extension of time in which to respond [Doc. No. 15].  The plaintiff then filed his response to the motion for summary judgment on June 13, 2005 [Doc. No. 18].  Because it was late, the defendant filed a motion to strike the plaintiff's response [Doc. No. 19].  Since the plaintiff filed the request for an extension before his time for a response expired, the court GRANTS the motion for an extension [Doc. No. 15] and DENIES the motion to strike [Doc. No. 19].

Strangely, the plaintiff's response brief does not cite any authority in support of the plaintiff's position.  Instead, the brief is a convoluted and often repetitive restatement of the facts of the case.  On the final page, the brief makes the ominously vague statement, "TO BE CONTINUED."  Plaintiff's First Brief at 18 [Doc. No. 18].  Then, on July 18, 2005, the plaintiff filed a second brief entitled, "Part Two: Argument and Authorities." [Doc. No. 22].  Though the clerk docketed this brief as a response to the defendants' motion to strike, it is clearly a continuation of the plaintiff's first brief in response to the defendants' motion for summary judgment and an obvious attempt to avoid the time and page limitations upon such a brief.  For this reason, the defendants filed a motion to strike the plaintiff's second brief [Doc. No. 24].

3

Given the dubious nature of the plaintiff's attorney's course of action in filing a brief in two parts, the court is inclined to grant the motion to strike.  However, in the interests of justice and fairness to the plaintiff, the court DENIES the motion to strike [Doc. No. 24].  The court will consider all filings made by the parties in relation to the motion for summary judgment.

**III.     Motion for Summary Judgment [Doc. No. 12]**

    **A.   Factual Background**

In analyzing a summary judgment motion, the court resolves all issues of fact in favor of the nonmovant.  Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).  The plaintiff was an independent contractor of one of the defendants, Velocity Express Leasing Southeast, Inc. ("Velocity Leasing"), from approximately 1999 to January 2003.  The plaintiff has never worked for the other two named defendants, Velocity Express, Inc. and Velocity Express Southeast, Inc., and he states in his first brief that he intends to dismiss those defendants, though he has yet to do so.  Plaintiff's First Brief at 2 [Doc. No. 18].

In 1989, the plaintiff fathered a child with Sarah Peabody in Alabama, but the plaintiff and Peabody were never married.

4

Shortly after the birth of their child, Peabody initiated child support proceedings against the plaintiff in state court in the Circuit Court of Lee County, Alabama ("Lee County Court"). Ultimately, the court awarded Peabody child support payments to be made by the plaintiff.  The plaintiff, however, failed to comply with the court order and, by 2001, he was in arrears in the amount of $17,806.96.  On May 9, 2001, the Lee County Court held a hearing on the contempt petition against the plaintiff and held that the plaintiff was in contempt of his child support order.  Prior to the hearing, the parties submitted an agreement to the court in which the plaintiff agreed to pay $400 to purge the contempt charge and to have an income withholding order placed on his paycheck.  On July 11, 2001, the Lee County Court issued a written order incorporating the parties agreement in the order and setting a review hearing for August 22, 2001.

On August 22, 2001, the Lee County Court held the scheduled hearing, which the plaintiff attended.  On August 29, 2001, the Lee County Court issued another written order incorporating a revised agreement and setting another review hearing for December 12, 2001.  In September 2001, pursuant to an order by the Lee County Court, Velocity Leasing began withholding $80 per week from the plaintiff's paycheck, which was to be then sent to

5

the Alabama Child Support Payment Center to satisfy the
plaintiff's child support obligations.

On December 12, 2001, the Lee County Court held the
scheduled review hearing, but the plaintiff failed to appear.
Therefore, the court issued a warrant for his arrest on December
20, 2001.  The local law authorities apparently made no effort
to execute the arrest warrant.  Accordingly, the plaintiff
continued working for Velocity Leasing through 2002 and into
2003, during which time Velocity Leasing continued to withhold
approximately $80 per week, but it failed to remit those funds
to the Alabama authorities.  Velocity Leasing claims that the
failure to send the funds was due to an administrative error.

On February 6, 2003, the plaintiff entered a state driver's
license facility in Opelika, Alabama, in order to apply for a
commercial license as a truck driver.  The plaintiff completed
his written test, and then gave the clerk his social security
number, which was entered into a computer.  The outstanding
arrest warrant apparently appeared on the computer screen
because a state trooper summoned the plaintiff to the back
office and placed him under arrest.  The plaintiff was
incarcerated for eight days from February 6 through February 14,
2003.  According to Velocity Leasing, it was during this time

6

that Velocity Leasing learned of its administrative error in failing to remit the funds it withheld from the plaintiff's pay. Accordingly, Velocity Leasing then forwarded all of the withheld money to the proper Alabama authorities.  The plaintiff then used these funds to purge himself of the contempt charge that resulted from his missing the December 12, 2001, court date.

The plaintiff filed suit against the defendants on June 14, 2004, and the defendants removed this case on the grounds of diversity jurisdiction on August 20, 2004. [Doc. No. 1].  In his complaint, the plaintiff alleges that the Lee County Circuit Court ordered him to pay child support.  Complaint ¶ 8 [Doc. No. 1].  The plaintiff also alleges that the Lee County Court directed the defendants to withhold certain sums each week from his income and forward those sums to the Alabama Child Support Payment Center.  Complaint ¶ 9 [Doc. No. 1].  The plaintiff then alleges that the defendants failed to remit the monies withheld and that, as a proximate result of this failure on the part of the defendants, the plaintiff was arrested and remained in jail until the defendants finally remitted the plaintiff's money to the proper Alabama authorities.  Complaint ¶ 13 [Doc. No. 1]. The complaint states two claims: Count I is for conversion (¶¶ 5-17) and Count II is for fraud and deceit (¶¶ 17-27).  The

7

complaint also seeks punitive damages in the amount of $12,000,000.

**B.   Legal Analysis**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute exists as to any material fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970). This burden is discharged by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).  In determining whether the moving party has met its burden, a district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the nonmovant has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Ultimately, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2511 (1986).  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  <u>Id.</u> at 248, 106 S. Ct. at 2510.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>

As the court noted earlier, the defendants removed this case on the basis of complete diversity of citizenship between the plaintiff and the defendants.  Under the doctrine set forth in <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817 (1938), "federal courts sitting in diversity apply state substantive law and federal procedural law."  <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 427, 116 S. Ct. 2211, 2219 (1996); <u>see also</u> <u>Esfeld v. Costa Crociere, S.P.A.</u>, 289 F.3d

9

1300, 1306 (11th Cir. 2002).   Accordingly, the plaintiff's claims for fraud, conversion, and punitive damages are governed by Georgia substantive law and federal procedural law.

### 1.   Plaintiff's Claim for Fraud

Under Georgia law, "A fraud claim has five elements: (a) a false representation by the defendant, (b) scienter, (c) an intent to induce the plaintiff to act or refrain from acting, (d) justifiable reliance by the plaintiff, and (e) damage to the plaintiff."   Tom's Amusement Co., Inc. v. Total Vending Services, 243 Ga. App. 294, 298, 533 S.E.2d 413, 418 (2000). "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort."   Bogle v. Bragg, 248 Ga. App. 632, 634, 548 S.E.2d 396, 399 (2001).

The plaintiff has failed to produce evidence supporting several elements of his fraud claim.   First, to succeed on a claim for fraud, "a plaintiff must show, among other things, that the defendant made a false representation with the intent to induce the plaintiff to act or refrain from acting."   Park Place Cafe, Inc. v. Metropolitan Life Ins. Co., 254 Ga. App. 733, 735, 563 S.E.2d 463, 465 (2002) (citing Johnson v. Rodier, 242 Ga. App. 496, 498, 529 S.E.2d 442, 445 (2000)).   But, as the

10

defendants point out, the plaintiff has not provided any evidence suggesting that Velocity Leasing or either of the other defendants made any false representations with the requisite intent. In fact, during his deposition testimony, the plaintiff admitted that he had no evidence that Velocity Leasing even knew that the money had not been sent to the proper Alabama Authorities:

> Q:  My question to you is, do you have any facts or evidence that Velocity Express Leasing Southeast knew payments were not being made to Alabama?
>
> A:  No.  I really don't, but Velocity Express should have been sending that money.  I mean, they was taking it out of my check.  Why would you-all hold my money?
>
> Q:  So your testimony is that you don't have any facts or evidence to suggest that they, Velocity Express Leasing Southeast, knew that the payments weren't being made to Alabama; correct?
>
> A:  Well, no.  I really can't say I do, no.

Plaintiff's Deposition at 49-50, Ex. 14 to Plaintiff's First Response Brief [Doc. No. 18].  Furthermore, the plaintiff admitted that he had no evidence that any of the three defendants intended to deceive him:

> Q:  Do you have any evidence that anyone at – any individual who worked at any of the three defendants intended to deceive you?
>
> A.  No.

11

Plaintiff's Deposition at 142, Ex. 14 to Plaintiff's First Response Brief [Doc. No. 18].  Given that the plaintiff has no evidence that Velocity Leasing knew that the payments were not being made or that Velocity Leasing intended to deceive him, the plaintiff cannot point to any evidence supporting the scienter element of his claim.  For the same reason, the plaintiff cannot point to any evidence creating a dispute of material fact as to whether Velocity Leasing intended to induce the plaintiff to act or refrain from acting.

Furthermore, the plaintiff has failed to demonstrate that Velocity Leasing's failure to remit the funds caused him any damage.  It is clear from the court documents from the Lee County Court, which were attached to the plaintiff's first brief [Exs. 7, 8, 9, 10, and 11 to Doc. No. 18], that the reason for the plaintiff's arrest was because of his failure to appear for the December 12, 2001, review hearing.  For purposes of his fraud claim, the fact that Velocity Leasing failed to remit the funds it was withholding, while unfortunate, did not cause the plaintiff to be arrested or otherwise cause him any damages. When Velocity Leasing learned of its mistake, it then sent the funds on to the Alabama authorities.  In fact, the plaintiff was then able to use those funds to pay to have the contempt charge,

which, again, he received because he failed to appear in court, purged.  Thus, the plaintiff has failed to point out evidence supporting the second, third, and fifth elements of a claim for fraud.  For all of these reasons, the court grants the defendants' motion for summary judgment on the plaintiff's fraud claim.

### 2.  Plaintiff's Claim for Conversion

Under Georgia law, in order to make a prima facie case for conversion, a plaintiff must show: (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.  <u>Johnson v. First Union National Bank</u>, 255 Ga. App. 819, 823, 567 S.E.2d 44, 48 (2002).  As the defendants point out in their brief, the plaintiff has not provided any evidence that he demanded the return of the withheld funds and the defendants refused to return the funds.  In fact, the plaintiff admits in his complaint and statement of undisputed facts the Velocity Leasing remitted the withheld funds to the proper Alabama authorities prior to the initiation of this suit.  Complaint ¶ 13 [Doc. No. 1]; Plaintiff's Statement of Material Facts ¶ 6 [Doc. No. 17].

In his responsive briefs, the plaintiff also argues that Velocity Leasing improperly withheld $18.71 as a processing fee on each payment made by Velocity Leasing to the plaintiff. The $18.71 deduction is shown on each settlement report the plaintiff received from the defendant. Ex. 16 to Plaintiff's First Responsive Brief [Doc. No. 18]. Apparently, the plaintiff believes that the $18.71 deduction was a processing fee that Velocity Leasing charged the plaintiff for withholding the funds discussed previously. The plaintiff's own exhibits, however, demonstrate that this is not the case.

Exhibit 19 to the plaintiff's first responsive brief, entitled "Notice Memorandum" and dated May 2, 2001, states, "Please be advised that Velocity Express Leasing is implementing an administration fee to cover various overhead and ancillary costs associated with the management and administration of our business. The terms of this administration fee are set forth in an Amendment to the Independent Contractor Agreement or Cartage Agent Agreement." [Doc. No. 18]. The next page in Exhibit 19 is the amendment, and it states, "Contractor agrees to pay an administration fee to [Velocity Express Leasing] equal to 1.9% of the Contractor's net settlement, which Contractor agrees

14

shall be deducted from Contractor's settlement checks."   The amendment is signed three times by the plaintiff.

Taking as an example the first settlement statement provided by the plaintiff, which is dated January 12, 2002, it shows that the plaintiff earned $956.45 prior to any deductions.  Per the amendment to the plaintiff's independent contractor agreement, the plaintiff agreed to pay 1.9% of those earnings as a processing fee, and 1.9% of $956.45 is $18.17, which is exactly the amount the settlement statement shows as being deducted in the form of a processing fee.  Thus, the processing fee is simply that which the plaintiff agreed to, and it is unrelated to the funds Velocity Leasing withheld in order for the plaintiff to satisfy his child support obligations.  For all of these reasons, the plaintiff's claim for conversion fails, and, therefore, the court grants the defendants' motion for summary judgment as to that claim.

### 3.  Punitive Damages

In this case, the plaintiff has failed to point to evidence that supports each of the elements of each of his claims against the defendants.   In his complaint, the plaintiff seeks $12,000,000 in punitive damages.  Under Georgia law, however, "Punitive damages are not supportable when the tort is not

15

proved." <u>Associated Software Consultants Organization, Inc. v.</u> <u>Wysocki</u>, 177 Ga. App. 135, 137, 338 S.E.2d 679, 682 (1985); <u>see</u> <u>also</u> <u>Clarke v. Cox</u>, 197 Ga. App. 83, 84, 397 S.E.2d 598, 600 (1990).  Since the plaintiff cannot prove his fraud or conversion claims, the court holds that the plaintiff is not entitled to punitive damages.  In conclusion, the court GRANTS the defendants' motion for summary judgment [Doc. No. 12].

**IV.  Defendants' Motion for Sanctions [Doc. No. 13]**

The court has reviewed the defendants' motion for sanctions, and holds that sanctions are inappropriate in this case. Accordingly, the court DENIES the defendants' motion for sanctions [Doc. No. 13].

**IV.  Conclusion**

For the reasons states above, the court:

 (1)  DENIES the plaintiff's motion for leave to serve more than twenty-five written interrogatories on the defendants [Doc. No. 10];

 (2)  GRANTS the defendants' motion for summary judgment [Doc. No. 12];

 (3)  DENIES the defendants' motion for sanctions [Doc. No. 13];

(4) GRANTS the plaintiff's motion for an extension of time to file a response to the defendants' motion for summary judgment [Doc. No. 15];

(5) DENIES the defendants' motion to strike the plaintiff's brief in opposition to the defendants' motion for summary judgment [Doc. No. 19]; and

(6) DENIES the defendants' motion to strike the plaintiff's reply brief [Doc. No. 24].

Since this resolves all pending issues in this matter, the clerk is directed to close the file in this case.


SO ORDERED, this 27th day of January, 2006.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

17